**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)**

| | |
|---|---|
| JULIE MAATTALA, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>    vs.<br><br>KOCHAVA INC.,<br><br>                        Defendant. | Civil Action No.  1:22-cv-11473-IT<br><br>Honorable Indira Talwani<br><br><br><br><br><br>Complaint Filed: September 12, 2022 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P 12(b)(2), OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)**

TO THIS HONORABLE COURT:

      Kochava Inc. ("Kochava") hereby respectfully submits its brief in support of its Motion to Dismiss the First Amended Class Action Complaint ("FAC") of Plaintiff Julie Maattala ("Plaintiff" or "Maattala") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6).

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  FACTUAL BACKGROUND ............................................................................ 2

    A.   Kochava is a Delaware Corporation Without Significant Ties to
        Massachusetts ......................................................................................... 2

    B.   Kochava, its SDK product, and the Marketplace .................................... 2

    C.   The Data in the Marketplace .................................................................. 4

III. LEGAL STANDARD ........................................................................................ 5

    A.   Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) ....... 5

    B.   Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ................ 6

IV.  LEGAL ARGUMENT ....................................................................................... 7

    A.   This Court Lacks General Personal Jurisdiction over Kochava ............. 7

    B.   This Court Lacks Specific Personal Jurisdiction Over Kochava and
        Plaintiff's Own Allegations Fail To Satisfy the Massachusetts Long-Arm
        Statute .................................................................................................... 8

        1.   Plaintiff Does Not Allege Her Injury Arose From a Transaction in
            Massachusetts Involving Kochava ............................................. 9

        2.   Plaintiff Does Not Contend That Kochava Provides Goods or
            Services in Massachusetts Which Give Rise to her Claims ..................... 10

        3.   Plaintiff Does Not Allege Kochava Committed Any Act or
            Omission in Massachusetts Causing a Tortious Injury to Plaintiff .......... 10

        4.   Plaintiff Cannot Rely on Her Domicile For Purposes of Personal
            Jurisdiction .............................................................................. 11

    C.   Plaintiff Fails to State a Claim For Unjust Enrichment ........................ 12

        1.   Plaintiff Concedes She Did Not Have a Direct Exchange With
            Kochava Which Bars Her Recovery Under a Theory Of Unjust
            Enrichment .............................................................................. 12

        2.   Plaintiff Cannot Show Any Unjust Benefit Retained at Her
            Expense .................................................................................... 14

        3.   The Mere Receipt of a Benefit is Insufficient to Support a Claim

MPA ISO MOTION TO DISMISS UNDER FRCP 12(b)(2), OR IN THE ALTERNATIVE, FRCP 12(b)(6)

for Unjust Enrichment .................................................................... 15

4.    Plaintiff's Recovery under the Theory of Unjust Enrichment Must
Fail Because There is an Adequate Remedy at Law ................................. 16

D.    Plaintiff Fails to State a Claim for Mass. Gen. Laws ch. 93A ............................. 16

1.    Plaintiff Fails to Allege "Unfair or Deceptive Acts or Practices" ............ 17

2.    Plaintiff Fails to Allege an Actual Injury ................................................. 19

V.    CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ARE-Tech Square, LLC v. Galenea Corp.*,
  91 Mass. App. Ct. 1106, 79 N.E.3d 1111 (2017)................................................................. 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................. 6, 7

*Azumi LLC vs. Lott & Fischer, PL*,
  No. CV 21-11311-NMG (D. Mass. Aug. 16, 2022)......................................................... 1

*Baker v. Goldman, Sachs & Co.*,
  771 F.3d 37 (1st Cir. 2014).................................................................................................... 17

*Barrett v. Lombardi*,
  239 F.3d 23 (1st Cir. 2001)...................................................................................................... 5

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
  825 F.3d 28 (1st Cir. 2016)...................................................................................................... 5

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................. 6, 17

*Blake v. Prof'l Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012)............................................................................... 13

*Bluetarp Fin., Inc. v. Matrix Constr. Co.*,
  709 F.3d 72 (1st Cir. 2013)...................................................................................................... 6

*Boit v. Gar-Tec Prods., Inc.*,
  967 F.2d 671 (1st Cir. 1992).................................................................................................. 6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)................................................................................................................. 5

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
  771 F.3d 59 (1st Cir. 2014)...................................................................................................... 5

*Chase Bank USA, N.A. v. Baker*,
  2010 WL 3118659 (Mass. App. Div. June 29, 2010).................................................. 15

*Chiang v. Skeirik*,
  582 F.3d 238 (1st Cir. 2009).................................................................................................. 7

*Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy*,
  485 F. Supp. 3d 282 (D. Mass. 2020)............................................................................. 10

*Cossart v. United Excel Corp.*,
  804 F.3d 13 (1st Cir. 2015).................................................................................................. 5, 6

*Crocker v. Hilton Int'l Barbados, Ltd.*,
  976 F.2d 797 (1st Cir.1992)................................................................................................... 11

*Cunningham v. Ardrox, Inc.*,
  40 Mass.App.Ct. 279 (1996) ......................................................................... 11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .............................................................................. 1, 7, 8

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002).......................................................................... 5, 6

*Droukas v. Divers Training Academy, Inc.*,
  375 Mass. 149 (1978) ..................................................................................... 10

*Fed. Trade Comm'n v. Kochava Inc.*,
  No. 2:22-CV-377 (D. Idaho Aug. 29, 2022) ............................................... 19

*Fiske v. Sandvik Mining*,
  540 F. Supp. 2d 250 (D. Mass. 2008) ........................................................... 8

*Foster v. Mayo*,
  2006 WL 4114286 (Mass. Super. Dec. 19, 2006) ...................................... 15

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
  46 F.3d 138 (1st Cir. 1995).......................................................................... 6

*Friedr. Zoellner (N.Y.) Corp. v. Tex Metals Co.*,
  396 F.2d 300 (2d Cir.1968).......................................................................... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..................................................................................... 7

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*,
  445 Mass. 790 (2006).................................................................................... 19

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ....................................................................................... 7

*Hesselton v. BankNorth, N.A.*,
  2004 WL 1588255 (Mass. Super. May 11, 2004) ...................................... 15

*Hiam v. HomeAway.com, Inc.*,
  267 F. Supp. 3d 338 (D. Mass. 2017),
  *aff'd*, 887 F.3d 542 (1st Cir. 2018)............................................................. 17

*Hussain v. Rhode Island Hosp.*,
  2019 WL 3546888 (D. Mass. June 12, 2019) ............................................ 10

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  2015 WL 3751422 (D. Mass. June 15, 2015) ............................................ 20

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) ......................................................... 14

*In re Smartphone Geolocation Data Application*,
  977 F. Supp. 2d 129 (E.D.N.Y. 2013)........................................................ 18

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................................... 5

*Jones v. Experian Info. Sols., Inc.*,
  141 F. Supp. 3d 159 (D. Mass. 2015) .................................................................... 17

*Kuan Chen v. United States Sports Acad., Inc.*,
  956 F.3d 45 (1st Cir. 2020) ................................................................................. 7, 8

*Leardi v. Brown*,
  394 Mass. 151 (1985) ........................................................................................... 19

*Linkage Corp. v. Trustees of Bos. Univ.*,
  425 Mass. 1 (1997) ............................................................................................... 17

*Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC*,
  2022 WL 1003963 (D. Mass. Apr. 4, 2022) ......................................................... 13

*Marti v. Schreiber/Cohen, LLC*,
  454 F. Supp. 3d 122 (D. Mass. 2020),
  *appeal dismissed*, 2020 WL 6877926 (1st Cir. June 18, 2020) ............................. 16

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  412 F.3d 215 (1st Cir. 2005) ................................................................................. 14

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
  142 F.3d 26 (1st Cir. 1998) ................................................................................... 17

*Nowak v. Tak How Inves. Ltd.*,
  94 F.3d 708 (1st Cir. 1996) ..................................................................................... 5

*Phillips v. Prairie Eye Ctr.*,
  530 F.3d 22 (1st Cir. 2008) ..................................................................................... 6

*Platten v. H.G. Berm. Exempted Ltd.*,
  437 F.3d 118 (1st Cir. 2006) ................................................................................... 6

*Reed v. Zipcar, Inc.*,
  883 F. Supp. 2d 329 (D. Mass. 2012),
  *aff'd*, 527 F. App'x 20 (1st Cir. 2013) ................................................................... 16

*Rule v. Fort Dodge Animal Health, Inc.*,
  607 F.3d 250 (1st Cir. 2010) ................................................................................. 19

*Salamon v. Terra*,
  394 Mass. 857 (1985) ........................................................................................... 14

*Sanchez v. Pereira-Castillo*,
  590 F.3d 31 (1st Cir. 2009) ..................................................................................... 6

*Sandstrom v. ChemLawn Corp.*,
  904 F.2d 83 (1st Cir. 1990) ..................................................................................... 8

*Santagate v. Tower*,
  64 Mass. App. Ct. 324 (2005) ............................................................................... 16

*SCVNGR, Inc. v. Punchh, Inc.*,
  478 Mass. 324 (2017) ........................................................................................................... 1

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017) ................................................................................................... 16

*Slaney v. Westwood Auto, Inc.*,
  366 Mass. 688 (1975) ......................................................................................................... 19

*Tatro v. Manor Care, Inc.*,
  416 Mass. 763 (1994) ........................................................................................................... 9

*Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*,
  534 F. Supp. 340 (D. Mass. 1982) ..................................................................................... 13

*Ticketmaster-New York, Inc. v. Alioto*,
  26 F.3d 201 (1st Cir. 1994) ................................................................................................... 5

*Tomasella v. Nestle USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020) ..................................................................................... 12, 14, 16

*Tyler v. Michaels Stores, Inc.*,
  464 Mass. 492 (2013) ......................................................................................................... 20

*U.S. v. Swiss Am. Bank, Ltd.*,
  191 F.3d 30 (1st Cir. 1999) ........................................................................................... 11, 12

*Waters v. J.C. Christensen & Assocs., Inc.*,
  No. CIV.A. 08-11795-NG, 2011 WL 1344452 (D. Mass. Mar. 4, 2011),
  *report and recommendation adopted*, No. 1:08-CV-11795, 2011 WL 1344544 (D. Mass. Mar.
  22, 2011) ............................................................................................................................. 20

*Watkins v. Omni Life Sci., Inc.*,
  692 F. Supp. 2d 170 (D. Mass. 2010) ................................................................................. 14

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
  2020 WL 1452579 (D. Mass. Feb. 10, 2020),
  *report and recommendation adopted*, 2020 WL 1446845 (D. Mass. Mar. 24, 2020) ............. 10

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ............................................................................................................. 5

**Statutes**

Mass. Gen. Laws ch. 223A, § 3 ............................................................................................... 5

Mass. Gen. Laws ch. 223A, § 3(a) ................................................................................... 1, 9, 10

Mass. Gen. Laws ch. 223A, § 3(b) ...................................................................................... 1, 10

Mass. Gen. Laws ch. 223A, § 3(c) .................................................................................. 1, 10, 11

Mass. Gen. Laws ch. 223A, § 3(d) ...................................................................................... 1, 11

Mass. Gen. Laws ch. 223A, § 3(e) ........................................................................................ 1, 9

MPA ISO MOTION TO DISMISS UNDER FRCP 12(b)(2), OR IN THE ALTERNATIVE, FRCP 12(b)(6)

Mass. Gen. Laws ch. 223A, § 3(f) ................................................................... 1, 9

Mass. Gen. Laws ch. 223A, § 3(g) .................................................................. 1, 9

Mass. Gen. Laws ch. 223A, § 3(h) ...................................................................... 1

Mass. Gen. Laws ch. 93A, § 2(a) ...................................................................... 19

Mass. Gen. Laws ch. 93A, § 9(1) ...................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 5

Fed. R. Civ. P. 12(b)(6) .................................................................................. 6, 7

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 6

MPA ISO MOTION TO DISMISS UNDER FRCP 12(b)(2), OR IN THE ALTERNATIVE, FRCP 12(b)(6)

# I.    INTRODUCTION

Plaintiff does not and cannot plead sufficient facts for this Court to exercise general or specific personal jurisdiction over Kochava. General jurisdiction does not exist over Kochava, who does not have continuous and systematic contacts in Massachusetts to make it "at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014).  Nor is there specific jurisdiction because the restrictive requirements of the Massachusetts long-arm statute are not satisfied. Plaintiff has not suffered any injury, much less one that occurred in Massachusetts or caused by Kochava by conduct committed or directed here. Mass. Gen. Laws ch. 223A, § 3(a)-(h); *Azumi LLC vs. Lott & Fischer, PL*, No. CV 21-11311-NMG (D. Mass. Aug. 16, 2022) (citing *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324 (2017)).  The only relevant connection between Kochava and Massachusetts is this suit, which is legally insufficient to vest personal jurisdiction consistent with due process.

On the merits, Plaintiff cannot sufficiently plead the elements of her unjust enrichment and MGL 93A claim, which fail as a matter of law because: (1) Plaintiff does not, and cannot, allege a direct relationship existed between herself and Kochava. Indeed, Plaintiff admits that her data was allegedly acquired through her use of a third party app on her mobile device; (2) Plaintiff fails to allege any impoverishment or detriment to herself as a result of the transfer of data to Kochava; (3) Plaintiff fails to allege that Kochava ever retained any benefit or that any such benefit was unjust; and (4) Plaintiff's claim fails because there is "an adequate remedy at law" and she cannot maintain a parallel claim for unjust enrichment.

Plaintiff also fails to sufficiently plead the elements for violation of MGL 93A, which fails as a matter of law because: (1) None of the conduct alleged is "unfair" or "deceptive" under MGL 93A because Kochava's collection of raw latitude/longitude data is not egregious or extreme conduct; latitude/longitude coordinates are data points which, without more, do not uniquely identify end users; and (2) Plaintiff fails to allege an actual injury, as required for a MGL 93A claim. Plaintiff poses a series of mere hypotheticals involving downstream unknown third parties who Plaintiff conjectures "could" analyze the raw data together with additional mapping programs or public records determine geolocation data vis à vis sensitive locations. But these implausible events did not occur, nor does Plaintiff claim that these conjectural harms befell her. Indeed,

Plaintiff does not and cannot allege that Kochava committed the alleged location mapping.

## II.     FACTUAL BACKGROUND

### A.     Kochava is a Delaware Corporation Without Significant Ties to Massachusetts

Kochava is a Delaware corporation with its principal place of business located at 201 Church Street, Sandpoint, Idaho 83864. FAC ¶ 54; Declaration of Jason Hicks ("Hicks Decl.") ¶ 2. Kochava presently has 170 employees, a majority of whom are based in Sandpoint. *Id.* at ¶ 3. Kochava produces no physical goods of any kind, nor does Kochava market or sell any products or services to consumers. *Id.* at ¶ 6. Moreover, Kochava neither owns nor leases any real property in Massachusetts. *Id.* Kochava also does not have a corporate mailing address or telephone number in Massachusetts, and has no corporate offices in Massachusetts. *Id.* Kochava does not advertise through print, television, radio, or other traditional advertising in Massachusetts. *Id.*

Kochava registered an agent with the Massachusetts Secretary of State in 2018 for the sole purpose of meeting payroll requirements for the five employees who worked from their homes there. *Id.* This represents less than 3% of Kochava's total work force. *Id.* None of these employees were involved in any alleged geolocation mapping, on which Plaintiff's claims are based. *Id.* At present, Kochava does not employ any personnel in Massachusetts. *Id.*

### B.     Kochava, its SDK product, and the Marketplace

Kochava is a business-to-business ("B2B") company provider of "software as a service" ("SaaS") focusing on mobile attribution and analytics, which entails the use of Kochava's proprietary software development kits, or "SDKs," to maintain and improve the performance of a clients' software, including apps. *Id.* at ¶ 2. The purpose of the SDKs is to support the apps' internal operations, including analyzing the apps' functioning. *Id.* Kochava's SDK can be integrated into a mobile app along with other SDKs as part of the mobile advertising data ecosystem. *Id.* Kochava's "IdentityLink" software is one of the tools in the SDK that permits cross-device attribution for marketing and analytics purposes, using anonymized device data, including advertising identifiers, for customer relationship management and point-of-sale systems maintained by Kochava's clients. *Id.* at ¶3. Kochava does not own the data of its clients, who always maintain control of the Kochava SDK's configuration, including what data is or is not

collected through the use of the SDK in the app. *Id.* In instances where the consumer uses an Apple device, the Kochava SDK does not have the ability to receive a Mobile Advertising Identifier ("MAID") without the consumer providing their affirmative consent to Apple. *Id.* Even in instances where the consumer uses a non-Apple device, the consumer provides their consent directly to the app developer to use the MAID prior to the consumer utilizing the app. *Id.*

Kochava markets, offers, and sells its SaaS and services only to app developers or marketers of apps, not end users. *Id.* Kochava has no relationship or interaction with the consumer end-user. *Id.* Kochava therefore has no knowledge of the residence of any downstream consumers or users of the apps that Kochava's clients develop. *Id.* Kochava's SaaS services are not specifically directed to Massachusetts end users—i.e., the consumers who would download the apps, which are or were available to third party users nationwide. *Id.*

IdentityLink does not identify any app user with any specificity that provides a user's name, address, or location, much less in relation to any sensitive location. *Id.* at ¶ 4. Kochava may receive internet protocol ("IP") addresses for apps in which a Kochava SDK is embedded for supporting the apps' internal operations. *Id.* Those IP addresses refer to the location of the internet network to which an app is connected at that particular point in time. *Id.* By itself, an IP address does not reveal an app user's location or residence. *Id.* Kochava does not review any geographical data as part of its own operations. *Id.* As part of its SDK services to clients, Kochava does not receive or otherwise obtain any contact information—name, telephone number, email address, or physical address—for the end users of the apps. *Id.* In addition to providing SaaS services to clients, Kochava provides a range of digital analytics services, including the Kochava Collective that serves as an aggregator of certain data made available through Kochava's proprietary data marketplace ("the Marketplace"). *Id.* at ¶ 4. Kochava populates the Collective with audience data received with consent from device users and third-party suppliers. *Id.* The FAC is concerned with alleged precise geolocation data that Plaintiff (incorrectly) alleges Kochava acquires and sells to its customers. FAC ¶¶ 1, 12, and 32. IdentityLink has nothing to do with the Marketplace or geolocation data of an app user. Hicks Decl. ¶ 4.

## C.      The Data in the Marketplace

Plaintiff admits that the Marketplace contained only raw data, such as latitude and longitude coordinates and a MAID associated with a device. FAC ¶¶ 17-21. As Plaintiff correctly explains, a MAID is a unique identifier assigned to a mobile device to assist marketers in advertising and mobile analytics. *Id.* at ¶ 18. Although latitude and longitude coordinates and MAID are available data points in the Marketplace, Kochava does not uniquely identify end users. *Id.* In other words, a MAID is anonymized, and, as Plaintiff acknowledges, a MAID can be changed by a consumer. *Id.* at ¶ 19.

Plaintiff alleges that Kochava provides access to certain data, but the only instance of such purported conduct (which is not a violation of law in any event) in the FAC – a free data sample on the AWS Marketplace ("Kochava Data Sample") – is no longer available. *Id.* at ¶¶ 23-31. As Plaintiff acknowledges, "the Kochava Data Sample was available on the AWS Marketplace until approximately June 2022." *Id.* at ¶ 25.

Plaintiff alleges that said precise geolocation data is associated with MAIDs and this combination makes it possible to track consumers to sensitive locations, such as "places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters, medical facilities, and welfare and homeless shelters, women's reproductive health clinics, and other sensitive locations." *Id.* at ¶ 32. However, Kochava does not sell a set of geolocation data, MAIDs, or other data points that would allow third parties to identify and track end users to alleged sensitive locations. Nor can or does Plaintiff so allege. Plaintiff acknowledges that it would require separate mapping programs (none provided by Kochava) to plot the latitude and longitudes to identify a mobile device at a sensitive location. *Id.* at ¶ 33. In fact, Plaintiff acknowledges that some other unspecified data brokers, and not Kochava, "advertise services to match MAIDs with 'offline' information, such as consumers' names and physical addresses." *Id.* at ¶ 34. Plaintiff further acknowledges that one would be required to infer the signals on a map with the location of a mobile device at night and public records of an owner or resident of an address to deduce a consumer's identity. *Id.* at ¶ 37. Plaintiff does not allege that any of this location and identity mapping has occurred, much less to her or that Kochava is involved in such

activities.

## III. LEGAL STANDARD

### A. Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)

Personal jurisdiction refers to a court's "power to require the parties to obey its [orders]." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirement of the United States Constitution. *Nowak v. Tak How Inves. Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996) (citing Fed. R. Civ. P. 12(b)(2); *see also Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Therefore, a court may not assert jurisdiction over a defendant unless "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In addition to satisfying Due Process concerns, "[t]o establish personal jurisdiction in a diversity case, a plaintiff must satisfy . . . the forum state's long-arm statute . . . ." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014) (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994)).

The jurisdictional requirement imposed by the Massachusetts long-arm statute are quite similar to, but not congruent with, the jurisdictional requirements imposed by the Due Process Clause. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). The requirements of both must be satisfied to establish jurisdiction over a defendant. *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015).

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, states:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the persons (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicit business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *See Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015). Under the "prima facie" standard for determining whether a plaintiff has met this burden, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 79 (1st Cir. 2013) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). Plaintiffs may not, however, establish a court's personal jurisdiction over defendants with "unsupported allegations in [the] pleadings," and are instead "obliged to adduce evidence of specific facts." *Platten v. H.G. Berm. Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006) (citing *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)). The court may also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Daynard*, 290 F.3d at 51 (internal citations omitted).

### B.    Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "'legal conclusion[s] couched as . . . factual allegation[s].'" *Id.* When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Although the courts accept the complaint's factual allegations as true and draw reasonable inferences therefrom, a complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009); *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 557 (2007) (internal

brackets omitted)). In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, courts reject sheer speculation, bald assertions, and unsupported conclusory statements. *See Iqbal*, 556 U.S. at 681. A court may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Chiang v. Skeirik*, 582 F.3d 238, 243 (1st Cir. 2009).

## IV.  LEGAL ARGUMENT

### A.  This Court Lacks General Personal Jurisdiction over Kochava

The Supreme Court has held that a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). However, a corporation is not subject to "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). It is not appropriate to rely on the magnitude of the defendants' in-state activities because "a corporation that operates in many places can scarcely be deemed at home in all of them . . . [o]therwise, 'at home' would be synonymous with 'doing business[.]'" *Daimler*, 571 U.S. 117, 139, n.20. Instead, "the lodestar of the inquiry is whether the corporation's general business contacts with the forum are sufficiently continuous and systematic 'as to render [it] essentially at home in the forum State.'" *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020) (quoting *Goodyear*, 564 U.S. at 919). On the other hand, "the mere whiff of a virtual presence will not suffice." *Kuan Chen*, 956 F.3d at 57. The plaintiff bears the burden of establishing the court's personal jurisdiction. *See id.* at 54.

In *Daimler*, the Supreme Court held that "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction' . . . . [which] have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 571 U.S. at 137 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Simple jurisdictional rules . . . promote greater predictability.")). This First Circuit has echoed this sentiment and held that "[t]he paradigmatic examples of locales in which a defendant

corporation is considered at home are its state of incorporation and the state that houses its principal place of business." *Kuan Chen*, 956 F.3d at 57 (citing *Daimler*, 571 U.S. at 139, n.19).

Plaintiff's allegations are insufficient to confer general personal jurisdiction over Kochava in Massachusetts. Kochava has no corporate offices, mailing address, or telephone number in Massachusetts. Hicks Decl. ¶ 7. Nor does it lease any real property in Massachusetts. *Id.* Kochava employs 170 individuals, with the majority based at Kochava's office in Idaho. *Id.* at ¶ 6. Five employees in Massachusetts worked from their homes and none of them had any involvement in the alleged geolocation data mapping at issue in this case. *Id.* at ¶ 8. At present, Kochava does not employ any personnel in Massachusetts. *Id.* Plaintiff's only alleged contact by Kochava in Massachusetts is Kochava's registration of an agent for service of process, which was created for administrative payroll purposes unrelated to the claims in this case. FAC at ¶ 58; Hicks Decl. ¶ 8. In any event, the mere registration of an agent for service of process with the Secretary of State does not vest *in personam* jurisdiction over Kochava. S*ee Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 89 (1st Cir. 1990) (holding that the following were not sufficient contacts to authorize general jurisdiction: "licensure and appointment of an agent for service of process; advertising; and litigation activities. . ."); *see also Fiske v. Sandvik Mining*, 540 F. Supp. 2d 250 (D. Mass. 2008) (Registration as a foreign corporation to do business and naming a registered agent for service of process in Massachusetts, standing alone, are insufficient for general personal jurisdiction in Massachusetts). Kochava does not have any continuous or systematic contacts in Massachusetts. As a result, the mere appointment of an agent for service of process in the state of Massachusetts, without more, does not confer general jurisdiction over Kochava.

### B.  This Court Lacks Specific Personal Jurisdiction Over Kochava and Plaintiff's Own Allegations Fail To Satisfy the Massachusetts Long-Arm Statute

Plaintiff predicates personal jurisdiction on the fact that Plaintiff is from Massachusetts and claims "a substantial portion of the events giving rise to this cause of action occurred here." FAC at ¶ 57. However, Plaintiff admits that Kochava is a Delaware corporation with its principal place of business in Idaho and does not have a place of business or have assets in Massachusetts.

*Id.* at ¶ 54.[1] Plaintiff makes a single unsubstantiated allegation that "Kochava transacts or has transacted business in [Massachusetts] and throughout the United States." *Id.*

Plaintiff alleges that her data was acquired by Kochava from a third-party who obtained her data through her use of the third-party's app on her mobile device. *Id.* at ¶ 52. Plaintiff admits she was using a third party app when her geolocation data was acquired. *Id.* at ¶ 53.

### 1. Plaintiff Does Not Allege Her Injury Arose From a Transaction in Massachusetts Involving Kochava

For jurisdiction to exist under Section 3(a) of the Massachusetts long-arm statute, the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the transaction of business by the defendant. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994).

Plaintiff does not contend that Kochava's unspecified transaction in Massachusetts is the basis of Plaintiff's claim. Plaintiff further does not contend, nor can she, that Massachusetts is the situs of Kochava's transaction with the third party data supplier from whom Kochava acquired Plaintiff's precision geo data. It is not. Despite Plaintiff's assertion that Kochava collects and sells data, the gravamen of her Complaint is of potential harms in the form of tracking, and more specifically, tracking to sensitive locations with specific identification of persons going there. FAC at ¶¶ 41-44, 59, 62-63. Plaintiff concedes "*it is possible* to identify a mobile device that visited a women's reproductive health clinic. . . ," "the data *could* be used to track consumers to places of worship. . . ," or "the data *could* be used to track consumers who visited a homeless shelter, domestic violence shelter, or other facilities directed to at-risk populations." *Id.* at ¶¶ 41-44 (emphasis added). Critically, Plaintiff never asserts that Kochava is doing the nefarious complained of tracking—only that "Kochava's data allows its customers to track . . . ." *Id.* at ¶ 45. Plaintiff's claim quite clearly does not arise out of Kochava's transaction—much less one that occurred in Massachusetts—but rather arises out of the possibility of a third-party taking a particular action. Not only does Plaintiff allege her data was provided to the third party app and

---

[1] This admission negates long-arm jurisdiction pursuant to Section 3(e)[real property interests], 3(f) [insurance of assets or persons], and 3(g)[domicile]. Section 3(h) is inapplicable as it relates to domestic relations orders.

not to Kochava, she fails to identify where the data was obtained by Kochava, rendering jurisdiction in Massachusetts improper. Thus, Plaintiff cannot establish personal jurisdiction under Section 3(a).

### 2. Plaintiff Does Not Contend That Kochava Provides Goods or Services in Massachusetts Which Give Rise to her Claims

Section 3(b) provides that a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's contracting to supply services or things in this commonwealth. *Hussain v. Rhode Island Hosp.*, 2019 WL 3546888 (D. Mass. June 12, 2019). The Massachusetts Supreme Judicial Court has construed the phrase "in this commonwealth" as "referring to the place where the services or things are to be supplied, rather than referring to the place of contracting." *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 2020 WL 1452579, at *7 (D. Mass. Feb. 10, 2020), *report and recommendation adopted*, 2020 WL 1446845 (D. Mass. Mar. 24, 2020) (quoting *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 157 (1978)).

Plaintiff cannot allege that Kochava renders any services or goods in Massachusetts with any particularity. Plaintiff cannot allege that Kochava instructed the third party app to collect information nor can Plaintiff genuinely allege that the third party app collected Plaintiff's information on behalf of Kochava. Thus, Plaintiff is unable to support personal jurisdiction over Kochava under Section 3(b).

### 3. Plaintiff Does Not Allege Kochava Committed Any Act or Omission in Massachusetts Causing a Tortious Injury to Plaintiff

Section 3(c) permits personal jurisdiction over defendants who caused tortious injury in the Commonwealth requires a well-pleaded allegation that a defendant did some act in the Commonwealth that caused the plaintiff harm. *Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy*, 485 F. Supp. 3d 282, 293 (D. Mass. 2020). This section is intended to apply only when the act or omission causing the injury occurs within Massachusetts. *Hussain v. Rhode Island Hosp.*, 2019 WL 3546888, at *4 (D. Mass. June 12, 2019).

Plaintiff's Complaint equally fails to support personal jurisdiction here as it does for Section 3(a) and Section 3(b). Plaintiff never asserts that Kochava is doing the nefarious

complained-of tracking, only that "Kochava's data allows its customers to track . . . ." *Id.* at ¶ 45. Such an allegation is purely conjectural and unsupported by real world examples or allegations of firsthand accounts by Plaintiff. Indeed, Plaintiff pleads no allegations of Kochava taking any act within Massachusetts which results in the purported harm, let alone to her. Plaintiff is unable to support personal jurisdiction over Kochava pursuant to Section 3(c) as a result.

### 4. Plaintiff Cannot Rely on Her Domicile For Purposes of Personal Jurisdiction

Plaintiff appears to rely on the fact that since she is from Massachusetts, then personal jurisdiction over Kochava is therefore proper. However, such an argument fails because Section 3(d) requires that the injury itself must occur in Massachusetts, and does not apply merely because the plaintiff feels the effects of a tortious injury there. *See Crocker v. Hilton Int'l Barbados, Ltd.*, 976 F.2d 797, 799–800 (1st Cir.1992); *Cunningham v. Ardrox, Inc.*, 40 Mass.App.Ct. 279, 282–83 (1996); *see also Friedr. Zoellner (N.Y.) Corp. v. Tex Metals Co.*, 396 F.2d 300, 302–03 (2d Cir.1968) (holding that a similar jurisdictional statute "is not satisfied by remote or consequential injuries [flowing from a conversion and the consequent unjust enrichment] which occurred in [the forum state]," notwithstanding that "the plaintiff is domiciled, incorporated or doing business in that state"). The statute specifies that substantial revenue must be derived from services which are "rendered . . . in" Massachusetts and the residency or origin connection, standing alone, is simply too attenuated to satisfy that benchmark. *U.S. v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 38 (1st Cir. 1999).

Plaintiff does not allege where the hypothetical tracking activities could be occurring, and she certainly does not allege that it is occurring in Massachusetts. On its face, Plaintiff's primary basis for suit in Massachusetts is because she is domiciled in Massachusetts and "feels the effects" in Massachusetts. Plaintiff provides the Court no information as to what those "effects" are either.

This is the same situation in *United States v. Swiss American Bank*, when the United States sued several foreign banks on theories of unjust enrichment, conversion, and breach of contract in order to recover monetary deposits forfeited to the government by a Massachusetts court. *Swiss Am. Bank, Ltd.*, 191 F.3d at 34-35. Interpreting Section 3(d) of the Massachusetts long-arm statute, the First Circuit upheld the District Court's dismissal of the Complaint for lack of personal

jurisdiction on the basis that the forfeiture order issued in Massachusetts only demonstrates that the effect of the tortious injury was felt in the forum state. *Id.* at 38. When rather, the actual unjust enrichment and conversion occurred in Antigua, where the defendants took the forfeited deposits and opened accounts, thus performing the injurious act. *Id.* The Court also noted the substantial revenue and the rendered service also occurred in Antigua, but in order to support personal jurisdiction in Massachusetts, these activities must have occurred in Massachusetts under the plain language of the long-arm statute. *Id.*

In the present case, Plaintiff makes no allegations that Kochava collected her information and then used it to track her to sensitive locations in Massachusetts. There are zero allegations that Kochava acquired substantial revenue in Massachusetts. There is no allegation of where any substantial revenue is being accrued. Nor does Plaintiff provide any particularized allegations placing Kochava or the data within the state. Even so, such an allegation is immaterial to the analysis considering Plaintiff already concedes the data transaction did not occur between her and Kochava. FAC ¶ 52.

Altogether, Plaintiff fails to allege sufficient facts to sustain Kochava's challenge to personal jurisdiction. Plaintiff alleges neither that a transaction occurred in Massachusetts, nor that Kochava has the necessary contact with Massachusetts under the Commonwealth's long-arm statute. Plaintiff cannot allege said necessary facts because ultimately, the purported harm does not arise between Plaintiff and Kochava, nor could it occur in Massachusetts. Plaintiff's Amended Complaint should be dismissed with prejudice for lack of personal jurisdiction.

**C.** **Plaintiff Fails to State a Claim For Unjust Enrichment**

For unjust enrichment, a plaintiff must sufficiently plead: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020).

**1.** **Plaintiff Concedes She Did Not Have a Direct Exchange With Kochava Which Bars Her Recovery Under a Theory Of Unjust Enrichment**

Plaintiff's claim fails as a matter of law because she has had no interaction or relationship

with Kochava. Rather, Plaintiff plainly states that a third party app collected her information and then provided it to Kochava. FAC at ¶ 53. Plaintiff concedes "Defendant sold Plaintiff's data, including but not limited to her geolocation data, that Defendant acquired through Plaintiff's use of a third party application on her mobile device." *Id.* at ¶ 52. A claim for unjust enrichment requires the plaintiff to have a direct exchange with the defendant, not through a third party; otherwise the plaintiff's claim is too far removed to warrant liability on an unjust enrichment theory. *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390 (D. Mass. 2012). "Unjust enrichment involves a direct benefit conferred on one party by another." *Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982). "[Plaintiff's] claim fails to state that the benefit was conferred upon the defendant *by the plaintiff*." *Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC*, 2022 WL 1003963, at *1 (D. Mass. Apr. 4, 2022) (dismissing claim for unjust enrichment that alleged a benefit conferred by a third-party) (emphasis in original). In this case, Plaintiff cannot satisfy the first element of an unjust enrichment claim.

In *Blake*, 898 F. Supp. at 365, plaintiff alleged that the defendant had misused its confidential information that it obtained from a third party. However, the plaintiff's confidential information was provided to defendant by a third party who had obtained that information from the plaintiff directly. *Id.* at 390. The *Blake* court held that plaintiff's complaint failed to state a claim for unjust enrichment against the defendant because plaintiff "fail[ed] to state that the benefit was 'conferred upon the defendant by the plaintiff.'" *Id.* The *Blake* court further stated that the defendant was too far removed from the exchange between plaintiff and the third party to warrant unjust enrichment liability. *Id.* 390-91. In *Marion Fam. Chiropractic*, 2022 WL 1003963, at *1, the court reached the same result, dismissing the unjust enrichment claim because plaintiff failed to allege that any benefit was conferred upon the defendant *by* the plaintiff.

As in *Blake* and *Marion Fam. Chiropractic*, Plaintiff does not plead that she interacted with or disclosed any information to Kochava. To the contrary, Plaintiff unequivocally alleges the information was "acquired through Plaintiff's use of a third party application on her mobile device." FAC at ¶ 52. Plaintiff identifies the third party, not Kochava that purportedly collected

her geo data. *Id.* at ¶ 53. This dooms her claim. Although Plaintiff's claim rests on a theory of "indirect unjust enrichment," *i.e.*, a purported claim against any or all downstream recipients of "raw latitude/longitude data" (FAC at ¶ 21), there is no such claim under the law. Rather, a claim for unjust enrichment seeks to create a quasi-contract between two parties and is used only as "an equitable stopgap for occasional inadequacies in contractual remedies at law." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005). Plaintiff fails to allege any such interaction with Kochava.

### 2. Plaintiff Cannot Show Any Unjust Benefit Retained at Her Expense

Under the doctrine of unjust enrichment, a plaintiff seeks restitution of a benefit conferred on another whose retention of the benefit at plaintiff's expense would be unconscionable. *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010). "The underlying basis for [the award] . . . is unjust enrichment of one party and unjust detriment to the other party." *Salamon v. Terra*, 394 Mass. 857, 859 (1985). In other words, the plaintiff must show an impoverishment or detriment to herself as a result of the transfer of possession to the defendant in order to satisfy the third element for unjust enrichment. *See generally In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (requirement for detriment); *see Tomasella*, 962 F.3d at 82 (unjust enrichment requires "acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value").

Plaintiff cannot allege that she has incurred a detriment to satisfy a claim for unjust enrichment. In fact, Plaintiff pleads no injury at all. She pleads only that "it is possible to identify which consumers' mobile devices visited reproductive health clinics[,]" not that she was actually tracked to such locations or that Kochava itself did so. FAC at ¶¶ 33, 41. Plaintiff does not plead how Kochava's alleged receipt and possession of raw geolocation data is a violation of any law, much less an unjust enrichment to Kochava that is inequitable or unconscionable. Plaintiff cannot legitimately allege that Kochava's alleged possession of such raw data has inflicted a detriment upon her. Rather, Plaintiff acknowledges she enjoyed the use of a third party application—from where the alleged geolocation data was obtained—on her mobile device. FAC at ¶¶ 52-53. Because there is no detriment as a result of the collection of her data on a third party application to which

she consented and from which she benefitted, the claim fails.

### 3. The Mere Receipt of a Benefit is Insufficient to Support a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim fails because she cannot plead plausible facts to support that any benefit received by Kochava was unjust. It is well-established that the receipt of a benefit alone is insufficient to support a claim for unjust enrichment. Rather, the benefit received by a defendant must be unjust. *See, e.g. Kasparian v. Santinello*, 2006 WL 3292812, at \*4 (Mass. Super. Oct. 2, 2006); *Chase Bank USA, N.A. v. Baker*, 2010 WL 3118659, at \*1 (Mass. App. Div. June 29, 2010). And whether a benefit is unjust depends on the expectations of the parties. *Kasparian v. Santinello*, 2009 WL 3292812, at \*4 (citing *Comm. Builders, Inc. v. Indian Motorcycle Assoc., Inc.*, 44 Mass. App. Ct. 537, 560 (1998)). "Usually, that means that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant." *Hesselton v. BankNorth, N.A.*, 2004 WL 1588255, at \*3 (Mass. Super. May 11, 2004) (citations omitted); *see also Foster v. Mayo*, 2006 WL 4114286, at \*6 (Mass. Super. Dec. 19, 2006).

Plaintiff needed to allege plausible facts from which the Court could reasonably conclude that reasonable people would expect payment by a mobile data analytics company to an end user for that end user's enjoyment of a third-party mobile application for her own benefit. Plaintiff can allege nothing of the sort. Plaintiff acknowledges that the raw data acquired by Kochava only served to "assist marketers in advertising to the consumer" and was not affirmatively used for any other purpose. FAC at ¶ 18. She also acknowledges that the geolocation data that Kochava received did not identify her and instead that other data points or mapping programs (not available through Kochava) would be needed to plot the latitude and longitudes to identify a mobile device at a sensitive location. *Id.* at ¶ 34 (conceding that some other unspecified data brokers, and not Kochava, "advertise services to match MAIDs with 'offline' information, such as consumers' names and physical addresses."). Further, Plaintiff also acknowledges that the data, albeit only a series of data points, is no longer available on the Marketplace. *Id.* at ¶ 16.

Plaintiff can point to no Massachusetts law or federal law to support an assertion that it was unjust for Kochava to receive raw mobile device data. Nor are there any factual allegations to

support that it was unjust for Kochava to receive raw mobile device data. Because Plaintiff has not alleged plausible facts to support that the benefit received by Kochava was unjust, her claim fails.

**4.      Plaintiff's Recovery under the Theory of Unjust Enrichment Must Fail Because There is an Adequate Remedy at Law**

It is well settled law that a Massachusetts plaintiff who has "an adequate remedy at law" cannot maintain a parallel claim for unjust enrichment, even if the plaintiff's legal remedy is not viable. *See Tomasella*, 962 F.3d at 82; *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (affirming dismissal of unjust enrichment claim because plaintiff had an adequate remedy at law under Chapter 93A, even though the court also properly dismissed the Chapter 93A claim); *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005); and *ARE-Tech Square, LLC v. Galenea Corp.*, 91 Mass. App. Ct. 1106 (2017). "Unjust enrichment is an equitable remedy, which exist[s] to supplement those available at law and not to contradict the judgments embodied in the statutes and the common law. Thus, a party with an adequate remedy at law cannot claim unjust enrichment. Specifically, [i]t is the availability of a remedy at law, not the viability of that remedy that prohibits a claim for unjust enrichment." *Tomasella*, 962 F.3d at 82-83.

MGL 93A provides Plaintiff with "an adequate remedy at law" and therefore, her claim for unjust enrichment must fail as a matter of law. Although Plaintiff's MGL 93A claim is flawed, it does not matter. "It is the availability of a remedy at law, not the viability of the remedy, that prohibits a claim for unjust enrichment." *Shaulis*, 865 F.3d at 16; *see also Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012), *aff'd,* 527 F. App'x 20 (1st Cir. 2013) (the viability of the remedy at law "is beside the point" and the "mere availability" of a remedy at law bars a claim for unjust enrichment). Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

**D.      Plaintiff Fails to State a Claim for Mass. Gen. Laws ch. 93A**

To state a violation of MGL 93A claim, a plaintiff must plead: (1) an unfair or deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the defendant's unfair or deceptive act or practice and the consumer's injury. *See Marti v. Schreiber/Cohen, LLC*, 454 F. Supp. 3d 122, 127 (D. Mass. 2020), *appeal dismissed*, 2020 WL 6877926 (1st Cir. June 18, 2020). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the

inquiry.'" *Linkage Corp. v. Trustees of Bos. Univ.*, 425 Mass. 1, 26 (1997). Plaintiff fails to plead any conduct by Kochava constituting an actionable violation of this statute or any cognizable injury in support of her statutory claims.

### 1. Plaintiff Fails to Allege "Unfair or Deceptive Acts or Practices"

Plaintiff cannot sufficiently plead or meet the requirements of MGL 93A because none of the conduct alleged is "unfair" or "deceptive." To find unfair or deceptive conduct, the courts examine "whether [the conduct] is immoral, unethical, oppressive, or unscrupulous. . . ." *Hiam v. HomeAway.com, Inc.*, 267 F. Supp. 3d 338, 347-348 (D. Mass. 2017), *aff'd*, 887 F.3d 542 (1st Cir. 2018). Kochava "must have committed some 'extreme or egregious' fault" to be liable under MGL 93A. *Jones v. Experian Info. Sols., Inc.*, 141 F. Supp. 3d 159, 163–64 (D. Mass. 2015); *see also In re TJX Companies Retail Sec. Breach Litig*, 564 F.3d 489, 497 (1st Cir. 2009) ("chapter 93A is intended exclusively for egregious conduct"). The "general meter . . . is that the defendant's conduct must be not only wrong, but also egregiously wrong—and this standard calls for determinations of egregiousness well beyond what is required for most common law claims." *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998).

Plaintiff resorts to conclusory labels to create the appearance of impropriety by alleging that Kochava enables the "use of spyware called 'Kochava SDK' or 'Tracking SDK'. . ." to acquire and track consumer's precise geolocation data in real-time "across multiple devices . . . for example [sic] mobile and desktop users." FAC at ¶¶ 1, 3-4, 6-7, 9, 11. Plaintiff does not allege that Kochava collects any personally identifying information about users, such as names, addresses, social security numbers, and dates of birth. Rather, Plaintiff mischaracterizes the capabilities of Kochava's SDK entirely by conclusorily labeling it "spyware." This is insufficient. *See Twombly*, 550 U.S. at 555 ("A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."). Indeed, Plaintiff claims to quote from sources describing Kochava's SDK but omits reference citations thereto. As shown by Plaintiff's own allegations, Kochava's SDKs do not collect geographical data from the end users for the purposes of tracking or specific identification of users through personally identifying information, which is not collected by Kochava. The SDK serves an entirely legitimate and lawful purpose, including

supporting an apps' internal operations, analyzing the app's functioning, and marketing analytics with the digital advertising ecosystem. Geolocation data services are an integral part of our modern lives, with indisputable benefits for companies and consumers alike. *See In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 138-139 (E.D.N.Y. 2013) ("Geolocation technology provides a broad range of functions, from the vital to the prosaic"; listing vital services such as "enhanced 9–1–1 systems transmit geolocation data to 9–1–1 dispatchers"; "turn-by-turn driving directions", "localized weather information"; "recovery of lost or stolen smartphones"; "parental monitoring of children"; and "allowing advertisers access to geolocation data to promote nearby businesses."). Geolocation services serve pro-competitive, legitimate, and essential purposes in the modern-day commerce ecosystem. *Id.* Plaintiff's allegations about Kochava's SDKs are not unfair or deceptive under MGL 93A as a matter of law.

Plaintiff also alleges that Kochava violated MGL 93A because it "sold Plaintiff's data, including but not limited to her geolocation data, that [Kochava] acquired through Plaintiff's use of a third party application on her mobile device." FAC at ¶ 52. Kochava receives data points, such as latitude and longitude coordinates and MAIDs (if permitted by a user) associated with a device and which may be used by third parties for advertising and mobile analytics from other data brokers. A MAID is a unique identifier assigned to a mobile device to assist marketers for the purpose of advertising. Although latitude and longitude coordinates and MAID are data points that are available in the Marketplace, Kochava does not uniquely identify end users. In other words, Kochava does not identify the location associated with latitude and longitude, nor does Kochava identify the consumer associated with the MAID. Kochava does not collect a **combined** set of geolocation data, MAIDs, or other data points that would allow third parties to identify and track end users to alleged sensitive locations. Plaintiff's allegations of tracking to sensitive locations is based on conduct of unknown third parties who *may* allegedly access the raw data and analyze it together with a secondary set of data to come up with a location that could be considered sensitive by a consumer. Plaintiff's allegations do not attribute any "extreme" or "egregious" conduct— triangulating plaintiff's identity with her timestamped locations in order to track her to sensitive locations—to Kochava.

Plaintiff merely cites to pending litigation between the Federal Trade Commission and Kochava for the conclusion that Kochava has violated MGL 93A. See FAC at ¶ 64 (citing *Fed. Trade Comm'n v. Kochava Inc.*, No. 2:22-CV-377 (D. Idaho Aug. 29, 2022)) ("the FTC Complaint"). In fact, Plaintiff admits that her allegations are "substantially identical" to the FTC Complaint. *Id.* Plaintiff's entire claim for this statutory violation rests on pending, un-adjudicated litigation where there has been no finding of unfair or deceptive conduct. *See id.* Accordingly, without a sufficient factual predicate, Plaintiff's MGL 93A claim fails.

### 2.   Plaintiff Fails to Allege an Actual Injury

Standing to sue under MGL 93A is limited to plaintiffs who have suffered an actual injury caused by the allegedly unfair practice. *See* Mass. Gen. Laws ch. 93A, §§ 2(a), 9(1). MGL 93A only permits an action by one "who suffers a loss as a result of [an] unfair or deceptive act," and therefore, the focus is on whether Plaintiff suffered such a loss. *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 695-696 (1975). "[I]njury under chapter 93A means economic injury in the traditional sense." *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253-55 (1st Cir. 2010). The Massachusetts Supreme Judicial Court has made it clear that MGL 93A was not "mean[t] to authorize purely vicarious suits by self-constituted private attorneys-general," *Leardi v. Brown*, 394 Mass. 151, 161 (1985) (citation and quotation marks omitted), and that MGL 93A herefore provides a remedy only where a plaintiff can show an actual loss. *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 802 (2006) ("A consumer is not . . . entitled to redress under [MGL 93A], where no loss has occurred. To permit otherwise is irreconcilable with the express language of [MGL 93A], and our earlier case law."). Indeed, the MGL 93A statutory text itself makes clear that only a person "who has been injured . . . may bring an action." Mass. Gen. Laws ch. 93A, § 9(1). Plaintiff alleges an injury but fails to identify the *actual* injury.

Plaintiff alleges that she was injured because "the data sold by Kochava *may* be used to identify individual consumers and their visits to sensitive locations. The sale of such data poses an unwarranted intrusion into the most private areas of consumers' lives and causes or is likely to cause substantial injury to consumers. For example, the data *may* be used to identify consumers who have visited an abortion clinic and, as a result, may have had or contemplated having an

abortion." FAC at ¶¶ 39–40 (emphasis added). However, Plaintiff does not allege that she was actually injured by the collection of her data, but rather, alleges the possibility of likely harm and provides an example. This is not a plausible allegation. An "injury" suffered by consumers must be "a distinct injury of harm that arises from the claimed unfair or deceptive act itself." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013) (a mere violation does not mean the consumer has suffered an injury or a loss entitling her to nominal damages and attorney's fees; instead, the violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer separate, identifiable harm from the violation itself). Plaintiff does not plead that she was identified as a consumer who visited a sensitive location with the geo data allegedly collected by Kochava as her hypothetical suggests. Plaintiff does not plead that she (or anyone for that matter) actually experienced the harm alleged in her FAC — i.e., that unknown third parties tracked her to sensitive locations. These speculative apprehensions of future harm are not enough to plead cognizable injury under MGL 93A. *Waters v. J.C. Christensen & Assocs., Inc.*, No. CIV.A. 08-11795-NG, 2011 WL 1344452, at *13 (D. Mass. Mar. 4, 2011), *report and recommendation adopted*, No. 1:08-CV-11795, 2011 WL 1344544 (D. Mass. Mar. 22, 2011).

Plaintiff further alleges that "[h]ad Plaintiff . . . known that the Defendant was selling their data, they would either have ceased to use the relevant phone applications or would have requested compensation for the misappropriation and sale of their location data." FAC at ¶ 95. Not only did Plaintiff fail to incur an injury, on the contrary, Plaintiff incurred a benefit for allowing access to her geo data. Plaintiff received a benefit because she enjoyed the use of the mobile application in exchange for her consent. *Shaulis*, 865 F.3d at 12 (complaint did "not state a legally cognizable economic injury under Chapter 93A because it fails to identify anything objective that [plaintiff] bargained for that she did not, in fact, receive."). A mere allegation that one would not have purchased the product but for the alleged misconduct is insufficient. *See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2015 WL 3751422, at *8 (D. Mass. June 15, 2015) (rejecting "informed choice" injury theory under MGL 93A).

## V. CONCLUSION

Kochava requests that Plaintiff's First Amended Complaint be dismissed with prejudice.

Dated: December 22, 2022

Respectfully submitted,

*/s/ Craig J. Mariam*
Thomas C. Blatchley (BBO# 706212)
Gordon Rees Scully Mansukhani, LLP
21 Custom House Street, Fifth Floor
Boston, MA 02110
Phone: 860-494-7525
Email: tblatchley@grsm.com

Craig J. Mariam (*pro hac vice*)
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Phone: (213) 270-7856
Email: cmariam@grsm.com

**Attorneys for Defendant Kochava Inc.**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Thomas C. Blatchley, certify that I conferred with Plaintiff's counsel, Julian C. Diamond on

December 16, 2022 and made a good faith effort to narrow the areas of disagreement that may be

resolved through amendment of the pleading or voluntary dismissal.

Dated: December 22, 2022                    Respectfully submitted,

_____
Thomas C. Blatchley (BBO# 706212)
Gordon Rees Scully Mansukhani, LLP
21 Custom House Street, Fifth Floor
Boston, MA 02110
Phone: 860-494-7525
Email: tblatchley@grsm.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be sent electronically to

the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated: December 22, 2022

Respectfully submitted,

*/s/ Craig J. Mariam*
Craig J. Mariam (*pro hac vice*)
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Phone: (213) 270-7856
Email: cmariam@grsm.com