# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| JULIE MAATTALA, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>KOCHAVA INC.,<br><br>             Defendant. | Civil Action No.: 1:22-cv-11473-IT |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
Email: james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Julian C. Diamond (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jsmith@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION AND SUMMARY OF ALLEGATIONS.......................................................1

ARGUMENT.................................................................................................................2

I.     THE COURT HAS PERSONAL JURISDICTION OVER KOCHAVA .........................2

     A.    Under *Holloway* And *General Contracting*, Kochava Consented To Personal Jurisdiction .............................................................................................................2

     B.    The Court Has Specific Jurisdiction Over Kochava ...............................................6

II.    KOCHAVA'S ARGUMENTS DO NOT SUPPORT DISMISSAL UNDER RULE 12(B)(6) .................................................................................................................8

     A.    Plaintiff States A Claim For Unjust Enrichment .....................................................8

          1.   Massachusetts Has No Direct Relationship Requirement ................................8

          2.   Invasion Of Privacy Is A Detriment For Purposes Of Unjust Enrichment .....10

          3.   Whether It Is Unjust For Kochava To Benefit From Tracking And Selling Geolocation Data Is A Factual Question Not Properly Resolved On The Pleadings.................................................................................................12

          4.   Kochava's Adequate Remedy At Law Arguments Lack Merit .....................13

     B.    Plaintiff Sufficiently States A Claim Under Mass. Gen. Laws Ch. 93A .............15

          1.   Plaintiff Has Alleged Unfair And Deceptive Conduct under 93A.................15

          2.   Plaintiff Has Alleged an Injury Cognizable under 93A .................................19

CONCLUSION............................................................................................................20

**TABLE OF AUTHORITIES**

**CASES**

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
  817 F.3d 755 (Fed. Cir. 2016) .............................................................................3, 6

*Adelson v. Hananel*,
  510 F.3d 43 (1st Cir. 2007).......................................................................................7

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*,
  547 F.3d 48 (1st Cir. 2008).....................................................................................13

*Blake v. Prof'l Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012) ....................................................................10

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................................................4

*Butler v. Daimler Trucks N. Am., LLC*,
  433 F. Supp. 3d 1216 (D. Kan. 2020) ......................................................................5

*California Gasoline Spot Mkt. Antitrust Litig.*,
  2021 WL 1176645 (N.D. Cal. Mar. 29, 2021).......................................................14

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ......................................................................................1, 11

*Catipovic v. Turley*,
  2012 WL 2089552 (N.D. Iowa June 8, 2012) .......................................................12

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Pathology Labs. of Arkansas, P.A.*,
  71 F.3d 1251 (7th Cir. 1995) .................................................................................13

*Crane v. Sexy Hair Concepts, LLC*,
  2017 WL 8728961 (D. Mass. Oct. 10, 2017) .......................................... 12, 14, 15

*Davis v. Off. Depot, Inc.*,
  2017 WL 773861 (D. Mass. Feb. 28, 2017) ..........................................................13

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002).......................................................................................6

*Diviachi v. Affinion Grp., Inc.*,
  2015 WL 3631605 (D. Mass. Mar. 11, 2015).........................................................12

*Fiske v. Sandvik Mining*,
  540 F. Supp. 2d 250 (D. Mass. 2008) ......................................................................5

*Ford Motor Company v. Montana Eighth Judicial District Court*,
  141 S.Ct. 1017 (2021) ...................................................................................7, 8

*Galvin v. Jaffe*,
  2009 WL 884605 (Mass. Super. Jan. 26, 2009)...................................................3

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*,
  940 F.2d 20 (1st Cir. 1991)...........................................................................2, 3, 5

*Gonzalez v. HOSOPO Corp.*,
  371 F. Supp. 3d 26 (D. Mass. 2019) ...................................................................18

Governo *Law Firm LLC v. Bergeron*,
  487 Mass. 188 (2021)...............................................................................13, 15

*Greenwald v. Chase Manhattan Mortgage Corp.*,
  241 F.3d 76 (1st Cir. 2001)..................................................................................9

*Hanson Engineers Inc. v. UNECO, Inc.*,
  64 F. Supp. 2d 797 (C.D. Ill. 1999)......................................................................3

*Hart v. TWC Prod. & Tech. LLC*,
  526 F. Supp. 3d 592 (N.D. Cal. 2021)................................................................10

*Holloway v. Wright & Morrissey, Inc.*,
  739 F.2d 695 (1st Cir. 1984).......................................................................2, 3, 4, 5

*In re Google Location Hist. Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021).........................................................1, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) .....................................................9

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017)...............................................................11

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) .............................................................................................7

*Kasparian v. Santinello*,
  2006 WL 3292812 (Mass. Super. Oct. 2, 2006) .................................................12

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) .............................................................................................7

*Kelley v. CVS Pharmacy, Inc.*,
  2007 WL 2781163 (Mass. Super. Aug. 24, 2007)...............................................19

*Knox v. MetalForming, Inc.*,
  914 F.3d 685 (1st Cir. 2019)................................................................................7

iii

*Lanier v. President & Fellows of Harvard Coll.*,
  490 Mass. 37 (2022).................................................................................................11

*Lannan v. Levy & White*,
  186 F. Supp. 3d 77 (D. Mass. 2016) ....................................................................17

*Learning Annex Holdings, LLC v. Rich Glob., LLC*,
  2011 WL 2732550 (S.D.N.Y. July 11, 2011) ......................................................12

*Liu v. DeFelice*,
  6 F. Supp. 2d 106 (D. Mass. 1998) ....................................................................4, 7

*Liu v. Sec. & Exch. Comm'n*,
  140 S. Ct. 1936 (2020) .........................................................................................11

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  552 F.3d 47 (1st Cir. 2009)...................................................................................15

*Massachusetts v. Mylan Labs.*,
  357 F. Supp. 2d 314 (D. Mass. 2005) ...............................................................9, 14

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
  775 F.3d 109 (1st Cir. 2014).................................................................................17

*Morcom v. LG Elecs. USA, Inc.*,
  2017 WL 8784836 (D.N.J. Nov. 30, 2017) ...........................................................9

*Mutnick v. Clearview AI, Inc.*,
  2020 WL 4676667 (N.D. Ill. Aug. 12, 2020) .........................................................7

*Myers v. Bennett L. Offs.*,
  238 F.3d 1068 (9th Cir. 2001) ...............................................................................4

*Nightingale v. Nat'l Grid USA Serv. Co., Inc.*,
  2020 WL 4506167 (D. Mass. Aug. 4, 2020) ........................................................16

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987)...................................................................................................3

*Patrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014)...............................................................................................13

*PMP Assocs., Inc. v. Globe Newspaper Co.*,
  366 Mass. 593 (1975).............................................................................................15

*Primerica Life Ins. v. Bailey*,
  2022 WL 267436 (D. Mass. 2022)..........................................................................9

*Pruell v. Caritas Christi*,
  678 F.3d 10 (1st Cir. 2012)....................................................................................20

*Rodriguez-Suris v. Montesinos,*
  123 F.3d 10 (1st Cir. 1997)................................................................14

*Sacks v. Dissinger,*
  488 Mass. 780, 178 N.E.3d 388 (2021).............................................8, 9

*Sandstrom v. ChemLawn Corp.,*
  904 F.2d 83 (1st Cir. 1990)..................................................................5

*Schmidt v. Navistar, Inc.,*
  2019 WL 1024285 (D.N.M. Mar. 4, 2019) ..........................................5

*Searle v. Nationstar Mortg., LLC,*
  2022 WL 3045807 (D. Mass. Aug. 2, 2022) ......................................18

*Tashjian v. CVS Pharmacy, Inc.,*
  2020 WL 1931859 (D. Mass. Mar. 13, 2020)......................................19

*Timmins Software Corp. v. EMC Corp.,*
  502 F. Supp. 3d 595 (D. Mass. 2020) ................................................14

*Tyler v. Michaels Stores, Inc.,*
  464 Mass. 492, 984 N.E.2d 737 (2013)..............................................20

*UMG Recordings, Inc. v. Kurbanov,*
  963 F.3d 344 (4th Cir. 2020) ...............................................................8

*United States v. Cardona,*
  411 F. Supp. 3d 113 (D. Mass. 2019) ................................................11

*Williams v. Facebook, Inc.,*
  384 F. Supp. 3d 1043 (N.D. Cal. 2018)..............................................10

*Yershov v. Gannett Satellite Info. Network, Inc.,*
  820 F.3d 482 (1st Cir. 2016)...............................................................17

*Zielinski v. Citizens Bank, N.A.,*
  552 F. Supp. 3d 60 (D. Mass. 2021) ..................................................16

**STATUTES**

15 U.S.C. 45(a)(1)...................................................................................17

Mass. Gen. Laws Ch. 93A................................................................passim

Mass. Gen. Laws Ch. 156D.......................................................................4

**RULES**

Fed. R. Civ. P. 8(d)(2)............................................................................14

**REGULATIONS**

940 Mass. Code Regs. 3.16 ...........................................................................................17

**OTHER AUTHORITIES**

Restatement (Third) of Restitution and Unjust Enrichment (2011)............................ 8, 11, 12, 13

## INTRODUCTION AND SUMMARY OF ALLEGATIONS

This case is about a company that secretly gathers and sells vast amounts of time-stamped, precise geolocation data from consumers' cell phones. "[T]ime-stamped [location] data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (internal quotations and citations omitted). Numerous class actions challenging the secret collection and monetization of cell-phone geolocation data have survived motions to dismiss, and this one should too. *E.g.*, *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021).

The allegations in the complaint are largely based on public statements by Kochava about its product and business practices. Kochava makes a spyware called the "Tracking SDK" (or alternatively, the "Kochava SDK"), which developers can install on their own mobile applications. FAC, ¶¶ 1, 3. Kochava says this spyware operates in "real time," "deals with potentially sensitive data such as device identifiers," and provides a timestamped, "precision location" of a consumer's mobile device. *Id*. ¶¶ 3, 5, 12, 16. "Kochava built settings that allow its application developer clients to ignore people's tracking preferences by simply toggling an override switch … so that companies could track customers across apps and websites." *Id*. ¶ 10. The volume of data that Kochava hoovers up is breathtaking: according to Kochava, its location data feed "delivers raw latitude/longitude data with volumes around 94B+ geo transactions per month, 125 million monthly active users, and 35 million daily active users, on average observing more than 90 daily transactions per device." FAC ¶ 21. Massachusetts residents are among the millions of people Kochava has monitored. *Id*. ¶¶ 52, 68. And while Kochava *claims* it has consent from all of these people, it "has identified no such consent" to date. *Id*. ¶ 15.

In its motion to dismiss, Kochava emphasizes that third party developers choose whether to install the Tracking SDK on their applications, but this ignores Plaintiff's allegations that *Kochava*—not just the third-party developers—secretly monitors and collects the data, and then monetizes it for Kochava's own purposes. *Id*. ¶¶ 11-12. Kochava admits in its briefing that the data brokerage arm of its business, called the Kochava Collective, is populated with data received from device users, and that admission is consistent with the allegations in the FAC. *Compare id.* ¶ 14 *with* MTD at 3.

Kochava first seeks dismissal for lack of personal jurisdiction. In the First Circuit, "authorization of [an] agent within [a] forum state to receive service of process" is one of the many ways that a company may "manifest consent to a court's *in personam* jurisdiction," at least where, as here, alleged injuries occurred in the forum state. *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991). Kochava has had a registered agent for service of process in Massachusetts for the last six years. Even if Kochava did not consent to jurisdiction in Massachusetts, the Court still has specific personal jurisdiction over the claims here. Kochava also raises a slew of arguments for dismissal under Rule 12(b)(6). As noted above, however, this is not a novel case, and many courts have rejected the same arguments for dismissal that Kochava makes here. Kochava's motion should be denied in its entirety.

## ARGUMENT

## I. THE COURT HAS PERSONAL JURISDICTION OVER KOCHAVA

### A. Under *Holloway* And *General Contracting*, Kochava Consented To Personal Jurisdiction

"It is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority." *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984). The First Circuit later cited this rule in *Gen.*

*Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991) ("*General Contracting*"), when it explained that "authorization of [an] agent within forum state to receive service of process" is one of the many ways that a company may "manifest consent to a court's *in personam* jurisdiction." The consent-by-registration rule is set forth in over 100 years of case law, as well as the Restatement. *See* Restatement (Second) of Conflict of Laws § 44 (1971) ("A state has power to exercise judicial jurisdiction over a foreign corporation which has authorized an agent or a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which the authority of the agent or official to accept service extends."); *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 767-70 (Fed. Cir. 2016) (O'Malley, concurring) (citing and analyzing over 100 years of case law addressing consent-by-registration, including the First Circuit's decision in *Holloway*). Massachusetts state courts apply the same rule too. *See Galvin v. Jaffe*, 2009 WL 884605, at *6 (Mass. Super. Jan. 26, 2009) ("Jaffe has consented to the jurisdiction of Massachusetts, as represented … by appointment of the Secretary as his agent for service of process in actions or proceedings against him in connection with sales of securities or violations of the Act.").

Equally important, *Holloway* and *General Contracting* also explained that consent jurisdiction is distinct from general or specific jurisdiction, allowing the court to "bypass" questions about a state's long arm statute or due process. *See General Contracting*, 940 F.2d at 22. Thus, in *Holloway*, the court explained there was no need to address arguments about the state long arm statute or due process because the appellant consented by registering an agent for service of process. *See Holloway*, 739 F.2d at 697; *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("*Absent consent*," personal jurisdiction requires "a constitutionally sufficient relationship between the defendant and the forum.") (emphasis added); *Hanson Engineers Inc. v. UNECO, Inc.*, 64 F. Supp. 2d 797, 800 (C.D. Ill. 1999) ("Consent to suit in a

particular forum is an independent ground for the exercise of personal jurisdiction, separate and distinct from any personal jurisdiction based on an analysis of minimum contacts") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985)).

Here, Kochava has had an agent for service of process in Massachusetts since 2018. MTD at 2 ("Kochava registered an agent with the Massachusetts Secretary of State in 2018 …"); *see also* Exhibit 1 (Entity Summary); Exhibit 2 (Annual Reports); Exhibit 3 (Foreign Corp. Cert. of Registration).[1] Kochava filed its last Annual Report with the Secretary of State on February 9, 2022. *See* Exhibit 2, at pp. 1-2. Kochava argues that it only had an agent "for the sole purpose of meeting payroll requirements" for its Massachusetts employees (Hicks Decl., ¶ 6), but none of the public documents identifying Kochava's agent for service of process contain any such limitation, and Massachusetts law does not provide such a limitation. *See* Exhibits 1-3; *see also* M.G.L.A. c. 156D, § 5.04 ("A corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation.").

The fact that the privacy invasions occurred in Massachusetts further supports application of *Holloway*'s consent-by-registration rule. In *Holloway*, the court explained that application of the consent-by-registration rule was further justified by the fact that there was a connection between the defendant's acts and the injuries occurring in the forum state. *See Holloway*, 739 F.2d at 699. In cases like this involving invasions of privacy, the injury occurs in the forum where the plaintiffs are located. *See*, *e.g.*, *Liu v. DeFelice*, 6 F. Supp. 2d 106, 109 (D. Mass. 1998) (although acts constituting an invasion of privacy were done in New York, they caused harm in Massachusetts, where the plaintiff was located); *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001) ("at least one of the 'harms' suffered by Plaintiffs is akin to the tort of invasion of

---

[1] All exhibits referenced in this brief are attached to the concurrently filed declaration of Julian Diamond.

privacy and was felt in Nevada"). Here, regardless of where Kochava is located, it monitored in "real time" the geolocation data of Plaintiff and other Massachusetts class members while they were in Massachusetts. *See* FAC, ¶¶ 1, 3, 52; *cf.* Maattala Decl. ¶ 2. Thus, the place of injury is Massachusetts, which further supports application of *Holloway* to this case.

Finally, Kochava's authorities do not support dismissal. In its brief, Kochava cites *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 89 (1st Cir. 1990), and *Fiske v. Sandvik Mining*, 540 F. Supp. 2d 250 (D. Mass. 2008), for the proposition that appointing an agent for service of process is insufficient for general personal jurisdiction. But as shown above, consent jurisdiction and general jurisdiction are two distinct concepts, and neither of the cases that Kochava cites addressed consent jurisdiction in any substantive way.[2] What is more, a year after *Sandvik*, the First Circuit cited the rule that registration of an agent for service of process *is* sufficient under the rubric of consent jurisdiction. *See General Contracting*, 940 F.2d at 22 (citing *Holloway*). The First Circuit's decisions in *Holloway* and *General Contractor* therefore control.

Kochava might argue that *Holloway* and *General Contractor* are no longer good law after *Daimler*, but Kochava would be wrong. Numerous courts have held that *Daimler* did not impliedly overrule 100 years of caselaw holding that registration of an agent for service of process furnishes consent to jurisdiction. *See, e.g.*, *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1236 (D. Kan. 2020) ("this Court joined three other District of Kansas judges in holding that consent-by-registration *did* survive *Daimler AG*") (citing authorities) (emphasis added); *Schmidt v. Navistar, Inc.*, 2019 WL 1024285, at *5-6 (D.N.M. Mar. 4, 2019) ("*Daimler* does not address cases or situations in which a defendant or foreign corporation has consented to personal jurisdiction in the forum state," including by "maintain[ing] a registered agent in this State."). In

---

[2] At most, *Sandvik* included one sentence rejecting the argument that the defendant consented to jurisdiction by filing an earlier suit, which is inapposite here. *See Sandvik*, 904 F.2d at 86-87.

2016, for example, a Federal Circuit concurring opinion cited the First Circuit's decision in *Holloway* as one of many cases applying the consent-by-registration rule. *Acorda Therapeutics*, 817 F.3d at 767-69. *Acorda* went on to explain that *Daimler* and *International Shoe* did not change the law on this point because they excluded situations involving consent-by-registration:

> The Supreme Court's subsequent decisions in *International Shoe* and *Daimler* did not overrule this historic and oft-affirmed line of binding precedent. Indeed, both cases are expressly limited to scenarios that do not involve consent to jurisdiction. In *International Shoe*, the Court restricted its discussion to cases where "*no consent to be sued or authorization to an agent to accept service of process has been given.*"

*Id.* at 768-69 (first emphasis in original; second emphasis added; internal citations omitted). In sum, Kochava's voluntary registration in this state for the last six years is a sufficient basis for asserting personal jurisdiction, particularly given that the injuries occurred in Massachusetts.

### B.       The Court Has Specific Jurisdiction Over Kochava

Defendant argues that this Court lacks specific personal jurisdiction because "Plaintiff does not allege her injury arose from a transaction in Massachusetts," and "Plaintiff does not allege that Kochava committed any act or omission in Massachusetts causing an injury to Plaintiff." MTD at 8-12. That is wrong.

The Court can "sidestep the statutory inquiry [of the Massachusetts long arm statute] and proceed directly to the constitutional analysis [] because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (citing *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972)). "In order for Massachusetts to exercise personal jurisdiction over [] an out-of-state defendant, the Due Process Clause requires that [the defendant] have sufficient minimum contacts with the state, such that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)." (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To exercise specific personal jurisdiction "plaintiffs must show that (1) their claims directly arise out of or relate to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019). "The contacts must be defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1025 (2021) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Here, Defendant purposefully directed its activities in Massachusetts by "tracking consumers' precise geolocation data and other data through the use of spyware … and then profiting from that data by selling it to others." FAC ¶ 1. Defendant "has said that its location data feed 'delivers raw latitude/longitude data.'" *Id.* ¶ 21. Plaintiff's injury arises out of Defendant's Massachusetts-related activities because Plaintiff is a "citizen of Massachusetts" and Defendant specifically obtained Plaintiff's Massachusetts-based location data from her use of the McDonald's phone application and then sold that data to third parties. *Id.* ¶¶ 52-53; Maattala Decl. ¶ 2. Plaintiff primarily suffered her injury in Massachusetts. FAC ¶¶ 52-53; *see also* Section II.A.1 above (citing, *e.g.*, *Liu*, 6 F. Supp. 2d at 109).

In short, any argument that Defendant did not purposely direct its activities to Massachusetts falls apart when one considers that the entire case centers around the intentional gathering and sale of Plaintiff's Massachusetts-based **location** data without consent. FAC ¶¶ 52-53; s*ee also Mutnick v. Clearview AI, Inc.*, No. 20-cv-0512, 2020 WL 4676667, at *2 (N.D. Ill. Aug. 12, 2020) (rejecting personal jurisdiction challenge where "defendants took biometric

information from Illinois residents, created a surveillance database, and then marketed and sold licenses to use this database to entities in Illinois."); *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 355 (4th Cir. 2020) (Finding that a Defendant that made a website that facilitated "location-based advertising" had purposely availed itself to a court's jurisdiction); *Ford Motor Company*, 141 S.Ct. at 1031 (finding "each of the plaintiffs brought suit in the most natural State" where "the plaintiffs are residents of the forum States[,] [t]hey used the allegedly defective products in the forum States[,] [a]nd they suffered injuries when those products malfunctioned in the forum States"). It would not be unfair to find that personal jurisdiction exists in a case where Defendant had intentionally monitored Massachusetts residents and sold their location data. If Defendant did not want to litigate a case in a Massachusetts court, Defendant could have easily avoided doing so by choosing not to monitor Massachusetts residents and sell their location data.

## II. KOCHAVA'S ARGUMENTS DO NOT SUPPORT DISMISSAL UNDER RULE 12(B)(6)

### A. Plaintiff States A Claim For Unjust Enrichment

#### 1. Massachusetts Has No Direct Relationship Requirement

Kochava argues that the direct relationship requirement (sometimes referred to as the "direct benefit requirement") requires dismissal because Plaintiff "had no interaction or relationship with Kochava," and "[a] claim for unjust enrichment requires the plaintiff to have a direct exchange with the defendant, not through a third party." MTD at 12-13. That is incorrect.

*First*, Kochava's argument rests on outdated authority. The Massachusetts Supreme Judicial Court recently held that "'[t]he misconduct that invalidates the transfer to the recipient [i.e., Kochava] may be the act of the recipient or of a third person.'" *Sacks v. Dissinger*, 488 Mass. 780, 790–91, 178 N.E.3d 388, 398 (2021) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 46). Even "so-called innocent parties" may be liable for unjust enrichment if they "have benefited directly due to the harm one person has tortiously perpetrated against another."

*Id*. at 791; *see also Primerica Life Ins. v. Bailey*, 2022 WL 267436 at *4 (D. Mass. 2022) (following *Sacks*). *Sacks* is consistent with earlier district court and First Circuit decisions holding that "unjust enrichment 'does not require any contractual or fiduciary relationship between the parties,'" and "does not require that a defendant receive direct payments from a plaintiff." *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005) (quoting *Greenwald v. Chase Manhattan Mortgage Corp.*, 241 F.3d 76, 78 n. 1 (1st Cir. 2001)).

Moreover, "the 'direct relationship' requirement is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiffs' claims, and thus only protects innocent third-parties." *Morcom v. LG Elecs. USA, Inc.*, 2017 WL 8784836, at *1 (D.N.J. Nov. 30, 2017) (internal quotation omitted). Put another way, "Defendant['s] focus on the lack of a 'direct relation' between plaintiffs and defendant[] is misplaced. Rather than looking at the relationship between the parties, courts typically focus on the relation between the plaintiffs' injury and the defendant's conduct." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011). Thus, even if the direct relationship requirement survived *Sacks*, it would not apply because Kochava is not an innocent third party, but instead the alleged tortfeasor.

*Second*, the premise of Kochava's argument is that "Plaintiff does not plead that she interacted with or disclosed any information to Kochava," but that too is incorrect. MTD at 13. Plaintiff alleges that Kochava—not just the third-party app provider—used the "Kochava SDK" to track Plaintiff's geolocation data, "and then profit[ed] from that data by selling it to others." FAC, ¶ 1. Plaintiff alleges that Kochava obtains this data in "real time" "whenever a user runs a mobile application that has the Tracking SDK spyware installed on it," and does so for its own financial gain. *Id*. ¶¶ 3, 6-7, 11-14. Therefore, unlike in the cases Kochava cites (which are now

in doubt after *Sacks*),[3] Kochava is not an "innocent third party" that inadvertently received data from third parties; instead, it was the primary actor who made that data collection possible, and then profited from it. Hence, the direct relationship rule does not apply.

### 2. Invasion Of Privacy Is A Detriment For Purposes Of Unjust Enrichment

Kochava argues that to support an unjust enrichment claim, "the plaintiff must show an impoverishment or detriment to herself as a result of the transfer of possession to the defendant." MTD at 14. This argument fails to support dismissal for two reasons.

*First*, Plaintiff alleges a detriment in the form of an interference with her privacy rights resulting first from Kochava's use of spyware to surreptitiously track her movements in "real time," and then selling that data to others. *See* FAC, ¶¶ 1, 3-4, 10-11, 14-15 (describing tracking and sales activities). Numerous courts have held in similar geolocation cases that privacy is a legally protected interest, and that interference with such privacy is a detriment for purposes of an unjust enrichment claim. In *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021), for example, the "Court [found] that Plaintiffs plausibly allege[d] that Google received a benefit from its collection and storage of comprehensive location data and that its retention of that benefit was unjust. Thus, the Court [found] that Plaintiffs … stated a valid unjust enrichment claim." And in *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 604-605 (N.D. Cal. 2021), the plaintiff stated an unjust enrichment claim against a cell phone application company regarding its alleged sale of users' geolocation data to third parties without permission, even though the plaintiff suffered no economic loss from disclosure of his data. *See also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018) ("Plaintiffs also aver the benefit to Facebook occurred at the expense of its users' data privacy, including the privacy of the named plaintiffs.");

---

[3] *See, e.g., Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390 (D. Mass. 2012).

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017) (denying motion to dismiss unjust enrichment claim where plaintiff's alleged data collection could be "linked to an individual's name and can be used to acquire highly specific geolocation data").

The Restatement (Third) of Restitution and Unjust Enrichment section 44 also recognizes that an invasion of privacy may be a detriment for purposes of an unjust enrichment claim. Specifically, that section provides in pertinent part:

> A person who obtains a benefit by conscious interference with a claimant's legally protected interests (or in consequence of such interference by another) is liable in restitution as necessary to prevent unjust enrichment, unless competing legal objectives make such liability inappropriate.

Restatement (Third) of Restitution and Unjust Enrichment § 44 (2011). The Restatement then goes on to explain that "[p]rofitable interference with other protected interests, *such as the claimant's right of privacy*, gives rise to a claim under § 44 if the benefit to the defendant is susceptible of measurement." *Id.* at § 44 cmt. B (emphasis added). This principle applies here because Massachusetts residents have a reasonable expectation of privacy concerning their geolocation data. *See United States v. Cardona*, 411 F. Supp. 3d 113, 115 (D. Mass. 2019) ("the Court cannot say [cell phone owner] lacked a reasonable expectation of privacy in the 5385 Phone's geolocation"); *Carpenter*, 138 S. Ct. at 2217 ("… individuals have a reasonable expectation of privacy in the whole of their physical movements").

*Second*, the relief available under the unjust enrichment claim is not limited to any out-of-pocket "impoverishment" resulting from the privacy invasions at issue here. "Decisions from this Court confirm that a remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts." *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020). The same has been true for Massachusetts state courts, where there "may also be 'cases in which the remedy for unjust enrichment gives the plaintiff something -- typically, the defendant's wrongful gain -- that the plaintiff did not previously possess.'" *Lanier v. President & Fellows of*

*Harvard Coll.*, 490 Mass. 37, 69 (2022) (Budd J., concurring) (Quoting Restatement (Third) of Restitution and Unjust Enrichment § 1 comment a). Massachusetts state and federal courts have held in a wide variety of contexts that unjust enrichment permits disgorgement of profits, including in consumer class actions like this one. *See*, *e.g.*, *Crane v. Sexy Hair Concepts, LLC*, 2017 WL 8728961, at *6 (D. Mass. Oct. 10, 2017) (denying motion to dismiss unjust enrichment claim where plaintiff sought disgorgement of profits); *Diviachi v. Affinion Grp.*, *Inc.*, 2015 WL 3631605 at *18 (D. Mass. Mar. 11, 2015) (same). Here, Defendant directly sells the location data at issue to third party purchasers. FAC ¶¶ 1, 25-31, 52-53, 77. The proceeds from these sales are thus recoverable under Plaintiff's unjust enrichment theory.

### 3. Whether It Is Unjust For Kochava To Benefit From Tracking And Selling Geolocation Data Is A Factual Question Not Properly Resolved On The Pleadings.

Kochava argues that any benefits it received from its spyware were not unjust, but that argument rests on a factual dispute that cannot be resolved on a Rule 12(b)(6) motion. *See*, *e.g.*, *Catipovic v. Turley*, 2012 WL 2089552, at *24 (N.D. Iowa June 8, 2012) ("the question of whether the circumstances are such that it is unjust to allow the defendant to retain the benefit that they received … are inappropriate for determination on a motion to dismiss."); *Learning Annex Holdings, LLC v. Rich Glob., LLC*, 2011 WL 2732550, at *1 (S.D.N.Y. July 11, 2011) ("… whether defendant has been 'unjustly enriched' or should 'in equity and good conscience' repay is a question for the Court *after* the jury has determined whether the facts are as claimed …") (emphasis in original). All but one of the decisions that Kochava cites were resolved either at summary judgment or trial, not the pleadings.[4] Kochava also argues that the issue of "whether a

---

[4] The only decision that Kochava cites resolving the issue on a motion to dismiss is *Kasparian v. Santinello*, 2006 WL 3292812, at *4 (Mass. Super. Oct. 2, 2006), where the court held that "benefiting from [a] romantic relationship … does not rise to being legally "unjust." That decision is clearly inapposite.

benefit is unjust depends on the expectations of the parties" (MTD at 15), but even if that argument were correct, it further shows that Kochava is raising factual disputes outside the pleadings.

Finally, citing no authority, Kochava argues "Plaintiff needed to allege plausible facts from which the Court could reasonably conclude that reasonable people would expect payment by a mobile data analytics company to an end user for that end user's enjoyment of a third-party mobile application for her own benefit." MTD at 15. But this case has nothing to do with whether class members enjoyed using third party mobile applications. The issue is Kochava's surreptitious collection and sale of geolocation data, and the allegations here are consistent with the numerous privacy-related cases described in Section II.B.1.b above.

### 4. Kochava's Adequate Remedy At Law Arguments Lack Merit

Kochava argues that the unjust enrichment claim must be dismissed because damages under the MGL 93A claim provide an adequate remedy at law. There are four separate reasons why this argument lacks merit. *First*, "Massachusetts courts generally follow the Restatement," including the Restatement of Restitution. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 56 (1st Cir. 2008).[5] Under the Restatement, "[a] claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." Restatement (Third) of Restitution, § 4(2).

*Second*, as this Court has held when rejecting the same argument Kochava makes here, Rule 8 permits a plaintiff to pursue both equitable and legal remedies in the alternative. *See Davis*

---

[5] *See also*, *e.g.*, Governo *Law Firm LLC v. Bergeron*, 487 Mass. 188, 199 (2021) (citing Restatement (Third) of Restitution); *Patrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014) (same); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Pathology Labs. of Arkansas, P.A.*, 71 F.3d 1251, 1254 (7th Cir. 1995) ("Federal common law tracks the consensus of states, which have developed the law of restitution … We therefore turn to the *Restatement of Restitution* (1937), which summarizes the dominant themes of state common law.") (internal citation omitted).

*v. Off. Depot, Inc.*, 2017 WL 773861, at *3 (D. Mass. Feb. 28, 2017) (Talwani, J.) (citing Fed. R. Civ. P. 8(d)(2)); *cf. Timmins Software Corp. v. EMC Corp.*, 502 F. Supp. 3d 595, 598, 606 (D. Mass. 2020) (Talwani, J.) (denying motion to dismiss MGL 93A and unjust enrichment claims). Nor may a court construe a plaintiff's legal claim as an admission that she has an adequate remedy at law foreclosing an alternative equitable claim. *See*, *e.g.*, *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir. 1997) ("Especially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent, pleading."). Plaintiff here expressly alleges that she lacks an adequate remedy at law, and that the unjust enrichment claim is pleaded "in the alternative to the extent that Plaintiff is required to do so." FAC ¶ 77.

*Third*, as other courts have held, non-restitutionary disgorgement of profits is not the equivalent of legal damages, and therefore the availability of legal damages under MGL 93A does not displace such equitable relief. *See Crane*, 2017 WL 8728961, at *6 (legal damages under MGL 93A was not an adequate remedy displacing disgorgement of profits under an unjust enrichment theory); *California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021) ("*California Gasoline*") (availability of damages did not preclude non-restitutionary disgorgement). Here, as in *Crane* and *California Gasoline*, Plaintiff seeks non-restitutionary disgorgement of Kochava's profits through her unjust enrichment claim. *See* FAC, ¶ 79 ("Defendant has been unjustly enriched in retaining the revenues derived from the sale of Plaintiff's and Class members' data, including their geolocation data."). At a bare minimum, it is too early to determine whether damages are an adequate alternative to recovering Kochava's profits under an unjust enrichment theory. *See Mylan Laboratories*, 357 F. Supp. 2d at 324 (holding that the question of whether legal damages provided an adequate remedy displacing an unjust enrichment claim seeking disgorgement of profits was premature at the pleading stage).

*Fourth*, Kochava overlooks that Plaintiff is pursuing her unjust enrichment claim on behalf of both a putative nationwide class and a Massachusetts subclass, but the MGL 93A class is *only* asserted on behalf of a Massachusetts subclass. *See* FAC ¶¶ 76, 82. That is a sufficient basis to reject Kochava's argument because the legal damages under MGL 93A are unavailable to the majority of putative class members. *See Crane*, 2017 WL 8728961, at *6 (rejecting same argument Kochava makes here because "the complaint here pleads unjust enrichment on behalf of a national class, to whom Chapter 93A claims, which must relate to conduct occurring substantially in Massachusetts, are not available").

**B.      Plaintiff Sufficiently States A Claim Under Mass. Gen. Laws Ch. 93A**

**1.      Plaintiff Has Alleged Unfair And Deceptive Conduct under 93A**

Defendant next argues that "Plaintiff cannot sufficiently plead or meet the requirements of MGL 93A because none of the conduct alleged is 'unfair' or 'deceptive.'" MTD at 17. But Defendant misstates Massachusetts law and confuses Plaintiff's claims.

Plaintiff has properly stated a Ch. 93A claim. Massachusetts courts have recognized that Ch. 93A "is a statute of broad impact." *Governo L. Firm LLC v. Bergeron*, 487 Mass. 188, 195, (2021). "Massachusetts courts, in considering whether a particular act or practice violates the unfairness prong of Chapter 93A: 'look to (1) whether the practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.'" *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593 (1975)) (emphasis added).

Plaintiff has pleaded an unfair or deceptive act. As discussed *supra*, Plaintiff alleges that without any form of meaningful consent, Defendant (a business that Plaintiff has no direct relationship with and had never heard of) obtained sensitive data about Plaintiff and class members, which includes data that allows Plaintiff and other class members to be personally identified, and then sold that data to anyone who wanted to purchase it for valuable consideration. FAC ¶¶ 1-38.

No reasonable person would believe that by downloading a phone application to order food from their cell phone, that they were implicitly agreeing to provide Defendant (again a company that Plaintiff has no relationship with) with highly sensitive and personally identifiable location data that Defendant could then package and sell on an open marketplace. FAC ¶¶ 52-53. Defendant lacks any meaningful controls over who accesses this location data. *Id.* ¶ 49. Anyone who purchased this information was able to track the location of application users, including tracking them in highly sensitive locations like abortion services, domestic violence shelters, and addiction recovery centers. *Id.* ¶¶ 32-48.

That this is unfair and deceptive cannot be reasonably disputed, especially at this procedural posture. *Nightingale v. Nat'l Grid USA Serv. Co., Inc.*, 2020 WL 4506167, at *3 (D. Mass. Aug. 4, 2020) (Finding "cognizable injuries under 93A" include an "invasion of privacy" under 93A); *Zielinski v. Citizens Bank, N.A.*, 552 F. Supp. 3d 60, 72 (D. Mass. 2021) (Finding "an invasion of the consumer's personal privacy causing injury or harm.").

In the midst of pointing to extraneous materials that are outside the pleadings (and not even supported with a declaration), Defendant claims that it does not collect "personally identifiable information." MTD at 17. As an initial matter, this contradicts the allegations in the complaint and should not be considered. FAC ¶¶ 32-38. However, even if Defendant's technical materials were considered, it would be wrong as a matter of law in this circuit to argue that Defendant's

16

collection of geolocation data was not personally identifiable information. The First Circuit has held that data similar to what is at issue in this case does indeed constitute "personally identifiable information":

> We agree with the district court that the information about Yershov that Gannett disclosed to Adobe fits the definition of PII. … Given how easy it is to locate a GPS coordinate on a street map, this disclosure would enable most people to identify what are likely the home and work addresses of the viewer (e.g., Judge Bork's home and the federal courthouse).

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). Plaintiff has alleged the same information is sold by Defendant. FAC ¶¶ 32-38.

Equally important, the statute states that "in construing [what constitutes unfair or deceptive acts or practices in actions brought under 93A] the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))." M.G.L. c.93A, § 2(b). Indeed, the Massachusetts Attorney General has promulgated rules stating that "an act or practice is a violation of M.G.L. c.93A, § 2 if … [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." 940 Mass. Code Regs. 3.16. In constituting these passages, the First Circuit has found that a violation of the FTC Act that causes injury to a plaintiff consumer is a per se violation of Chapter 93A. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 123 (1st Cir. 2014) ("And because Massachusetts has 'wholly incorporated' the FTC Act and its interpretation into state consumer protection law, a violation of the FDCPA not only per se violates the FTC Act, it also constitutes a per se Chapter 93A violation."). In fact, this Court has previously applied this same reasoning. *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 97 (D. Mass. 2016)

("The FDCPA is within that penumbra of statutory concepts of unfairness, as a violation of the FDPCA is a per se violation of Chapter 93A.") (Talwani, J.).

Here Defendant's conduct violates section 5(a)(1) of the Federal Trade Commission Act according to Federal Trade Commission interpretations. FAC ¶¶ 64-65; *Federal Trade Commission v. Kochava, Inc.*, 2:22-cv-00377-BLW, Dkt. no. 1. In fact, the FTC has declared that Defendant's "sale of this sensitive data, which can pose such an unwarranted intrusion into the most private areas of consumers' lives, is an unfair business practice and should be stopped." Request for Judicial Notice, Ex. A. Thus, Plaintiff, who suffered economic injury due to Defendant's failure to comply with section 5(a)(1) of the Federal Trade Commission Act, states a claim under 93A (and as argued in subsection (b) below, Plaintiff has sufficiently alleged a cognizable injury here). *Gonzalez v. HOSOPO Corp.*, 371 F. Supp. 3d 26, 36 (D. Mass. 2019) (Sustaining claim based on theory that a plaintiff who suffered injury due to a defendant's failure to follow a federal statute stated a claim under 93A); FAC ¶¶ 52-53.

Plaintiff alleges that Defendant, by selling Plaintiff's sensitive data including location data without Plaintiff's consent, has committed an unfair and/or deceptive act in violation of Section 5 of the FTC Act, and thus, in turn, Defendant has committed an unfair practice in violation of the Massachusetts Unfair and Deceptive Business Practices Act, M.G.LA. Ch. 93A. FAC ¶¶ 52-53, 91-96, 100. Because Plaintiff has properly pleaded that she suffered an economic injury due to Defendant's violation, she has stated a claim under 93A. *Searle v. Nationstar Mortg., LLC*, 2022 WL 3045807, at *8 (D. Mass. Aug. 2, 2022) ("However, an act is a per se violation of Section 93A if it 'fails to comply with existing statutes, rules, regulations or laws ... intended to provide the consumers of this Commonwealth protection.' Taking the facts alleged as true, the Searles have sufficiently pleaded that Nationstar violated Section 93A by not complying with RESPA.") (citing 940 C.M.R. 3.16).

## 2. Plaintiff Has Alleged an Injury Cognizable under 93A

Defendant next argues that Plaintiff fails to plead an injury cognizable under 93A. MTD at 19-20. But Defendant once again misunderstands Plaintiff's allegations.

Plaintiff has not simply alleged "the possibility of likely harm." MTD at 20. Rather Plaintiff's injury was the valuable consideration that Kochava obtained from the sale of Plaintiff's data without her consent. FAC ¶¶ 1, 25-31, 52-53, 91-96, 100-01. This is a cognizable injury according to 93A. *Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *12, 15 (Mass. Super. Aug. 24, 2007) ("This Court finds that the disgorgement of profit derived from an unfair and deceptive act or practice is a permissible damage remedy under G.L. c. 93A, § 9 … Phrased differently, this Court finds, as a matter of law, that Kelley was 'injured' within the meaning of G.L. c. 93A, § 9(1) from having been denied CVS's ill-gotten profit from this unfair and deceptive act."); *Tashjian v. CVS Pharmacy, Inc.*, 2020 WL 1931859, at *10 (D. Mass. Mar. 13, 2020), report and recommendation adopted, 2020 WL 2048456 (D. Mass. Mar. 30, 2020) (Finding that an allegation that the defendants "made a net profit each time they sent a Gap in Therapy letter and that Defendants failed to reveal that fact. As in Kelley, this allegation, which the court is required on a motion to dismiss to accept as true, is sufficient to establish that [the plaintiff] was injured by being denied the Defendants' ill-gotten profit.").

The Supreme Court of Massachusetts has in fact contemplated this exact scenario in similar circumstances:

> The issue of damages becomes more complicated where a merchant sells a consumer's personal identification information acquired in a manner violating § 105 (a), because the harm comes from the merchant's disclosure of the consumer's private information on the open market, not from a direct assault on her privacy. Disgorgement of the merchant's profits may provide an appropriate means of calculating damages in the latter situation, both because it is a close approximation of the value of the consumer's personal identification information on the open market and because such a damage award would remove any financial incentive to merchants to violate the statute. For a single consumer, the amount of damages for

such an injury also would likely amount to less than twenty-five dollars, thus triggering the minimum damage award provided by G.L. c. 93A, § 9(3).

*Tyler v. Michaels Stores, Inc*., 464 Mass. 492, 504, 984 N.E.2d 737, 746 n. 20 (2013).  Thus, the ill-gotten gains that Defendant received from the sale of Plaintiff's data without Plaintiff's consent, is an actual injury under 93A.

## **CONCLUSION**

The Court should deny Kochava's motion in its entirety.  If the Court determines that the pleadings are deficient in any respect, Plaintiff requests leave to amend to address any such deficiencies, or an opportunity to move for leave to amend if the Court so requires.  *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012) (lower court abused discretion by denying leave to amend after dismissing amended complaint because "some latitude has to be allowed where a claim looks plausible based on what is known.").

Dated:  January 19, 2023                             Respectfully submitted,

**REARDON SCANLON LLP**

By: */s/ James J. Reardon, Jr.*
        James J. Reardon, Jr.

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Julian C. Diamond (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  jdiamond@bursor.com

**BURSOR & FISHER, P.A.**

Joel D. Smith (*pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: jsmith@bursor.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2023, a true and correct copy of the forgoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: January 19, 2023

_/s/ James J. Reardon, Jr._

James J. Reardon, Jr.